Seabrooke v. Arch Comm.          CV-01-349-JD  06/20/03

UNITED STATES DISTRICT COURT FOR THE
                           DISTRICT OF NEW HAMPSHIRE


Jennifer L. Seabrooke

      v.                              Civil No. 01-349-JD
                                      Opinion No. 2003 DNH 107
Arch Communications Group, Inc.
and Liberty Mutual Insurance Company


                                O R D E R


      The plaintiff, Jennifer L. Seabrooke, brought suit in state
court seeking an award of short-term disability benefits from her
former employer's benefit plan under the Employee Retirement
Income Security Act ("ERISA").  The defendants removed the action
to this court.  Seabrooke's claims against her former employer,
Arch Communications Group, Inc., have been dismissed due to
Arch's bankruptcy.  Liberty Mutual Insurance Company moves for
summary judgment on the ground that it is merely a third-party
service provider, and, as such, Seabrooke cannot recover benefits
from it.


                           Standard of Review

      Summary judgment is appropriate when "the pleadings,
depositions, answers to interrogatories, and admissions on file,
together with the affidavits, if any, show that there is no
genuine issue as to any material fact and that the moving party

is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The party seeking summary judgment must first demonstrate the absence of a genuine issue of material fact in the record. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). A party opposing a properly supported motion for summary judgment must present competent evidence of record that shows a genuine issue for trial. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986). All reasonable inferences and all credibility issues are resolved in favor of the nonmoving party. See id. at 255.

## Background

Seabrooke seeks to recover short-term disability benefits under an employee benefit plan established by her former employer, Arch Communications Group, Inc., based on an alleged period of disability during her pregnancy. Arch administers the Group Benefits Plan, which includes short-term disability benefits, and the Plan is self-insured. Liberty provides certain administrative services for the Plan but does not insure the Plan and is not designated as Plan Administrator.

Liberty's services include accepting and reviewing all claims for benefits and making recommendations to Arch on benefit claims. In Seabrooke's case, Liberty reviewed her claim for benefits and denied the claim. The decision to deny benefits was

2

communicated to Seabrooke by both Liberty and the Arch human resources director. At Seabrooke's request, Arch had the denial reviewed by Liberty, and the claim was denied again.

## Discussion

Seabrooke contends that Liberty is liable to pay her for the amount of benefits she believes she was entitled to receive under the Plan.[1] Liberty contends that it is not liable for a claim for benefits because it served only as a third-party processor of claims for Arch. Seabrooke responds that Liberty functioned as a plan administrator and is therefore liable.

Another judge in this district has noted that the circuits are divided as to whether an ERISA claim for benefits under § 1132(a)(1)(B) may be brought only against the plan or may also be brought against the plan administrator. See Cook v. Liberty Life Assurance Co., 2002 DNH 75, 2002 WL 482572 at *2, n.3 (D.N.H.

---

[1]Although Seabrooke's claim is not entirely clear as alleged in her state writ, she states in her objection to summary judgment that she "seeks to recover short-term disability benefits from Liberty." Pl. Mem. at 1. As such, Seabrooke alleges a claim for benefits pursuant to 29 U.S.C. § 1132(a)(1)(B), rather than a breach of fiduciary duty claim pursuant to 29 U.S.C. § 1132(a)(2). See, e.g., Crocco v. Xerox Corp., 137 F.3d 105, 107 n.2 (2d Cir. 1998); Wolf v. Reliance Standard Life Ins. Co., 71 F.3d 444, 449 n.8 (1st Cir. 1995); Kodes v. Warren Corp., 24 F. Supp. 2d 93, 100-101 (D. Mass. 1998).

3

Mar. 29, 2002). In Cook, the court concluded that the First Circuit had not clearly decided the issue and indicated that a plan administrator with authority to pay benefits would be liable under § 1132(a)(1)(B). Id. That analysis is persuasive. In addition, however, the First Circuit has stated that a plan administrator may be liable under § 1132(a)(1)(B) under certain circumstances.

In Terry v. Bayer Corp., 145 F.3d 28 (1st Cir. 1998), the court considered the plaintiff's benefits claim against his former employer and the plan. In that case, the plan administrator, Bayer Corporation, had retained Northwestern National Life Insurance Company to process its benefits claims. Id. at 31. The district court granted summary judgment on the plaintiff's ERISA claim on alternative grounds that only the plan, not the plan administrator, was the proper party and that the claimed benefits had been properly denied. Id. at 34 n.5. On appeal, the court affirmed the decision based on the benefits decision and did not review the district court's determination of the proper party. Id.

Nevertheless, in the context of deciding whether the initial decision made by Northwestern to deny benefits or the determination of the Bayer Benefit Committee was the decision subject to judicial review, the court addressed the issue of

4

proper parties for an ERISA benefits claim. Id. at 35-36. In addition, the court discussed the liability of a third-party service provider under ERISA. Id. at 35. In Law v. Ernst & Young, 956 F.2d 364, 372-73 (1st Cir. 1992), the court held that an entity that acts as the plan administrator may be treated as such for purposes of an ERISA breach of fiduciary duty claim.

With few exceptions, ERISA claims must be brought against the employee benefit plan or plan fiduciaries.[2] Terry, 145 F.3d at 35. "[W]hen the plan administrator retains discretion to decide disputes, a third party service provider . . . is not a fiduciary of the plan and thus is not amenable to a suit under § 1132(a)(1)(B)." Id. On the other hand, if someone other than the named plan administrator controls the management of the plan, that entity is functioning as the plan administrator and may be treated as such. Law, 956 F.2d at 373. "Thus, the proper party defendant in an action concerning ERISA benefits is the party that controls administration of the plan." Terry, 145 F.3d at

---

[2]Courts have interpreted this holding to mean that plan administrators, if they are fiduciaries, are proper parties in an ERISA benefits claim. See, e.g., Nicholson v. Prudential Ins. Co., 235 F. Supp. 2d 22, 26 (D. Me. 2003); Kennard v. UNUM Life Ins. Co., 2002 WL 412067, at *1 (D. Me. March 14, 2002); Lacour v. Life Ins. Co., 200 F. Supp. 2d 622, 627-28 (W.D. La 2002); Liggans v. Daughters of Charity Nat'l Health Sys., Inc., 2000 WL 33309747, at *2 (S.D. Ind. July 6, 2000); Kodes v. Warren Corp., 24 F. Supp. 2d 93, 101 (D. Mass. 1998).

5

36. When a plan administrator is named in the plan, the plaintiff bears the burden of showing that another entity controls the administration of the plan. See Beegan v. Assoc. Press, 43 F. Supp. 2d 70, 73 (D. Me. 1999).

In this case it is undisputed that Arch was named in the plan as the plan administrator. Seabrooke nevertheless contends that Liberty, as the third-party services provider, acted as the plan administrator based on both the express terms of its agreement with Arch and on its actions in her case. In support of her claim, Seabrooke points to parts of the agreement between Arch and Liberty and the communications she received from Arch and Liberty pertaining to her claim.

Seabrooke cites Section I.A.2. of Annex B, which is part of the Disability Risk Management Agreement between Liberty and Arch. Section I.A pertains to claim payments and control and provides that Liberty makes the initial decision whether to approve or deny a submitted claim or to request additional information. If Liberty finds that a claim is not payable, it notifies Arch and the claimant of that finding. When Liberty finds that a claim for benefits is payable, it makes that recommendation to Arch and then Arch is responsible for paying benefits under the Plan.

"In the event that [Arch] determines that Liberty has

6

misinterpreted the Plan and so informs Liberty in writing, all claim recommendations reported after delivery of such writing will be made according to [Arch's] interpretation," unless on advice of counsel Liberty decides that Arch's interpretation would cause a violation of the law. Annex B at I.A.2. Under the agreement, Arch establishes the review procedure for disputed claims with advice on those claims from Liberty and makes the final determination on ERISA claims.

The Short Term Disability Benefits portion of the Group Benefits Plan provides that notice and proof of claims are to be given to Arch and that benefits are paid by Arch. Nothing that is cited by Seabrooke shows that Liberty has authority under the agreement to control or administer the Plan or to pay benefits.

Seabrooke also points to section E of Part Six of the agreement. That provision states that Liberty will have "sole discretion" with respect to the handling and resolution of claims or suits for which Liberty may be liable. Contrary to Seabrooke's interpretation, section E does not provide Liberty with discretion in determining benefits claims under the Plan but instead pertains to Liberty's discretion in handling claims brought against it.

In addition to the language of the agreement and the Plan, Seabrooke contends that the correspondence pertaining to her

claim demonstrates that Liberty actually administers the Plan. That correspondence shows that Arch's benefits manager notified Seabrooke's counsel that Seabrooke's claim was submitted to and reviewed by Liberty. The determination that she did not qualify for disability benefits was communicated by Arch's Human Resources Director and by Liberty. Arch directed Liberty to review the claim again, and it was again denied. Arch then explained the decision in a letter to Seabrooke.

Despite Liberty's authority to review and decide claims under the Plan, Arch retained final authority over the claims. Arch alone had the authority to pay benefits. Based on the summary judgment record, Seabrooke has not shown a trialworthy issue as to whether Liberty controls the administration of the Plan. Therefore, Liberty is entitled to summary judgment on the ground that it is not a proper party defendant in this case.


## Conclusion

For the foregoing reasons, Defendant Liberty Mutual Insurance Company's motion for summary judgment (document no. 18) is granted. The plaintiff's claim against Arch Communications was previously dismissed (document no. 13).

The clerk of court shall enter judgment accordingly and close the case.

SO ORDERED.

_____
Joseph A. DiClerico, Jr.
United States District Judge

June 20, 2003

cc:    James G. Noucas Jr., Esquire
       William D. Pandolph, Esquire

9